UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
F I L E D
OCT 3 1 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

Civil Action No. 18-80-HRW

PIONEER CREDIT COMPANY,                                           PLAINTIFF,

v.          MEMORANDUM OPINION AND ORDER

RICHARD T. WHELAN
and
FIRST FINANCIAL CREDIT, INC.,                                     DEFENDANTS.

This matter is before the Court upon Defendant First Financial Credit, Inc.'s Motion to Dismiss [Docket No. 10]. The matter has been fully briefed by the parties [Docket Nos. 10-1, 16 and 17]. For the reasons set forth herein, the Court finds that it does not have subject matter jurisdiction over this lawsuit and, as such, the Complaint will be dismissed without prejudice.

**I.**

This case arises from Defendant Richard Whelan's employment by Plaintiff Pioneer Credit Company ("Pioneer'), his subsequent resignation and, then, his employment by Defendant First Financial Credit, Inc. ("First Financial").

Pioneer specializes in providing consumer loans. [Affidavit of Craig Bell, District Manager for Pioneer, Docket No. 1-1, ¶ 3]. In October 2013, Pioneer hired Whelan as Branch Manager of its Morehead, Kentucky location. *Id.* at ¶ 5. When he was hired, Whelan and Pioneer entered into an Employment Agreement, which included a non-compete provision. [Employment Agreement, Docket No. 1-1].

On May 18, 2018, Whelan tendered his resigned to Pioneer. His last day of work at Pioneer was May 30, 2018.[Docket No 1-1, ¶ 6].

On July 2, 2018, First Financial, a consumer loan company, opened its doors across the parking lot from Pioneer, with Whelan as its manager. *Id.* at ¶¶ 8-11.

Pioneer filed this civil action against Whelan and First Financial alleging that Whelan breached the non-compete provision of his Employment contract and misappropriated Pioneer's confidential and proprietary information. [Docket No. 1]. In addition to seeking compensatory and punitive damages, Pioneer seeks to enjoin Whelan from working for First Financial and utilizing the propriety information he allegedly misappropriated from Pioneer. *Id.*

The lawsuit was filed in this Court, on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332, which confers federal jurisdiction over cases involving citizens from different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs *Id.*

Defendant First Financial seeks to dismiss the Complaint, pursuant to Fed.R.Civ.Proc. 12(b)(1), arguing that Pioneer's Complaint fails to allege sufficient facts to establish that the amount in controversy in this matter exceeds $75,000.00, as required by 28 U.S.C. § 1332.

## II.

Challenges to subject matter jurisdiction fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). A facial attack challenges the sufficiency of the pleading itself. On such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the

nonmoving party. *Id.* (*citing Scheuer v. Rhodes*, 416 U.S. 232, 235–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

In contrast, a factual attack, as is made here, challenges the factual existence of subject matter jurisdiction—i.e., whether the breach of contract, tortious interference, and injunctive relief claims exceed $75,000. On this form of motion, the Court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the Court that it has jurisdiction over the subject matter; "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citations omitted); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir.1996).

In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has wide discretion to consider affidavits and other documents outside the pleadings. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).

In connection with this analysis, the burden is upon the plaintiff to demonstrate that the Court has, and may appropriately exercise, jurisdiction over the subject matter. *RMI Titanium Co.*, 78 F.3d at 1134.

### III.

Under Federal Rule of Civil Procedure 8(a)(1), and in connection with diversity jurisdiction, Plaintiff must allege in its complaint facts that the jurisdictional amount has been met. In this case, the Complaint does not allege a specific amount of damages. However, Pioneer filed an Affidavit of its District Manager, Craig Bell, in this regard. He alleges the

amount of loss is $89,755.75, an amount which exceeds the jurisdictional minimum. He explains that, in the wake of Whelan's departure and, according to Pioneer, traitorous actions, "Pioneer had 39 customers pay off their loans in cash for a total loss of $89,755.75." [Docket No. 1-1, ¶ 4].

Defendant challenges that amount. It contends, and credibly so, that the amount claimed by Pioneer is the *full amount* of the loans allegedly paid off by their customers, not the loss Pioneer allegedly suffered as result of these loans being paid off. This number, according to Defendant, is not the amount of profit or revenue due Pioneer. To conclude otherwise, would defy the definition of an interest-bearing loan in the consumer loan context. Entities such as Pioneer and First Financial provide loans, in relatively small amounts, charging high interest to compensate for the lack of collateral. The full amount of a loan does not reflect the profit or loss of the lender. Therefore, Defendant asserts that the of $89,755.75 in loss alleged by Pioneer is false and the loss to Pioneer would be but a small percentage of that amount.

In support of their argument, Defendants cite, "*A way of monetizing poor people': How private equity firms make money offering loans to cash-strapped Americans*", an article by Peter Whoriskey first published in The Washington Post on July 11, 2018 which discussed the business practices of Pioneer's parent company, Mariner Finance [Docket No. 10-2]. In the article, a spokesperson for Mariner Finance said that the company earns a 2.6% rate of return on assets. Defendants applied this percentage to the aforementioned loans totaling $89,755.75, which yielded an annualized return of only $2,333.65. This figure, according to Defendant, is the actual loss suffered by Pioneer, an amount far below the jurisdictional threshold. Pioneer has not presented any additional information which would expand upon its alleged compensatory

4

damages.

Pioneer does, however, suggest that its claim for punitive damages elevates its claim to the requisite amount. Although punitive damages may be considered in determining whether subject matter jurisdiction exists, they are recoverable only if there is clear and convincing evidence of fraud, malice or oppression. KRS 411.184. Pioneer alleges that Whelan contemplated leaving his employ at Pioneer far in advance of tendering his resignation and was, in sum, in cahoots with First Financial to, essentially, poach Pioneer customers. Assuming this is true, while certainly not noble behavior, the Court is not inclined to find that, as stated in the Complaint, the machinations of the Defendant are the type of oppression, malic and fraud contemplated by the Kentucky statute and appurtenant case law. In other words, this is not a case where a punitive damage award is likely.

Further, Pioneer's cavalier reliance upon its claim for punitive damages ignores the well established rule that punitive damages cannot be excessively disproportionate to the amount of compensator damages. *See generally, Klepper v. Osborne*, 38 F.3d 1216 (6th Cir. 1994). Given the small amount of compensatory damages discussed above, Pioneer would be forced to rely upon an excessive punitive damage claim to force the matter over the amount in controversy threshold. Such a tactic has been found to be impermissible. *See Toikka v. Jones*, Civil Action No. 12-204-DLB, 2013 WL 978926, *3 (E.D. Ky. Mar. 12, 2013). Punitive damages do not get Pioneer to the $75,000.00 amount in controversy threshold.

Pioneer also seeks injunctive relief against Defendants. In determining the "amount in controversy" for an injunction, the Court must look to the "value to the plaintiff of conducting his business or personal affairs free from the activity sought to be enjoined." *See* Wright, Miller

5

& Cooper, Federal Practice and Procedure Jurisdiction 3d § 3708. To establish the value of a non-compete agreement, as is necessary for this case, "the court will usually look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *Basicomputer Corp. v. Scott*, 791 F.Supp. 1280, 1286 (N.D.Ohio 1991). Courts may also consider the "value of the plaintiff's lost revenue, the value of the future effect of a defendant's reach upon all the plaintiff's other contracts with its sales agents, and the value of trade secrets and confidential information acquired by the defendants during their employment." *Id.*

Although damages flowing from such losses are difficult to compute and not easily susceptible to monetary valuation, Plaintiff makes no attempt to do so. *Cf. Basicomputer Corp. v. Scott*, 791 F.Supp. 1280 (N.D. Ohio 1991). In an attempt to bolster its deficient damage allegations, in its response to Defendant's motion, Pioneer provided a "Second Affidavit of Craig Bell." [Docket No. 16-1]. Notably, Bell makes no mention of $89,755.75 figure sworn in his first Affidavit. Rather, he states that Pioneer "has suffered direct harm in excess of $75,000, including but not limited to, loss of direct market share, goodwill, reputation, and the benefit of the bargain with Whelan through his binding contractual obligations" and that if the Defendants "are not enjoined from their current activities [Pioneer] will suffer further damages in excess of $75,000." *Id.* at 2-3. He also alleges that he has requested relief in excess of $75,000.00 in "good faith" and that if the Defendants are not stopped, Pioneer "could be forced" to close its Morehead location. *Id.*

Bell's additional sworn statements which appear to negate its initial sworn statements, with no factual support, offer no information with which to assess the value of Pioneer's claim

6

for injunctive relief. The conclusory allegations do very little to support Pioneer's insistence upon federal jurisdiction.

**IV.**

The Court finds that Pioneer has failed to come forward with sufficient information to meet its burden to establish the amount-in-controversy.

Accordingly, **IT IS HEREBY ORDERED** that upon Defendant First Financial Credit, Inc.'s Motion to Dismiss [Docket No. 10] be **SUSTAINED** and that this matter be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction and **STRICKEN** from the docket of this Court.

This 31st day of October, 2018.



Signed By:
*Henry R. Wilhoit, Jr.*
**United States District Judge**